Judge Uhderwood
delivered the opinion of the court.
George S. Smith, in his life time, instituted a suit in chancery against Simeon Frost and others, to settle a controversy growing out of an interference between John Moseley’s entry for 20,000 acres, and Blackford’s preemption claim of 1,000 acres.
This suit was finally disposed of by this court. See the decision in I Bibb, 375, where the nature of the claims of the several parties are fully set forth.
Thereafter, the heirs of Smith, recognising the right of Frost, &o. to 500 acres of Blackford’s preemption under the decision of this court, filed their bill for the purpose of having a partition of the preemption between them andFrost and those claiming under him.
In 1829, Mason Singleton instituted an action of ejectment against Thomas S. Smith. The declaration contains two counts, the demise in one of which is laid in the names of John Craig, son of Toliver, John H. Craig, and Lewis Craig, J. S.; the other being in the name of Mason Singleton.
Pending these suits, on the 16th of March, 1830, the heirs of George S. Smith, of the one part, and Martha Frost, heir of Simeon Frost, John Frost, Stephen Frost, Richard Wood, Mason Singleton, John Lancaster, Robison Wells, and Susannah Hughes, for herself and the heirs of Joseph Hughes, deceased, of the other part, entered into articles of agreement, in which it is stipulated that the undersigned parties, who are interested in the result of said suits, being desirous of finally and speedily settling all matters of difference arising in said suits, and all other controversies relative to said land, have agreed and do hereby agree, that all disputes between them arising out of said suits, or that now exist between them relative to the land which they respectively claim under the titles of Joseph Blackford’s preemp *127 íion and John Moseley’s 20,000 acres aforesaid (all 'the parties claiming under both and each of said claims,) and all questions relative to improvements or rents on the laud in controversy, shall be referred and submitted to the award and final decision of John Parker, &c. or a majority of them, as arbitrators; and the parties do agree, and hereby oblige themselves, their heirs, &c. to have an order of reference made at the-next term of the Jessamine circuit court, pursuant to this agreement.” The artificies contain the following provisions :
££ The parties finally agree, that the award and decision of the arbitrators aforesaid, when made out and returned to the Jessamine circuit court, shall be entered as the final decree and judgment thereof in the several suits before named, and shall settle forever all disputes between the parties relative to said land. And it is positively agreed, that neither party, or any one of the undersigned who is interested therein, shall be at liberty to appeal or to prosecute any other suit for any matter that may be settled by said arbitrators, as it is clearly understood, that this arbitration is to settle finally and forever all controversies between the parties about said land. And, in order to make the same final and binding, each and every party and person interested who signs this agreement, hereby releases, relinquishes, and conveys to the party or person who may be entitled thereto under and by virtue of the award of said arbitrators, all and whatsoever land may be decreed to be conveyed by them respectively to any other of the parties.”
The Jessamine circuit court made an order to the following effect:
“It is ordered, that all the matters of difference between the parties be referred to John Parker, &c. or a majority of them, who, in settling the controversies between the parties, are to take into consideration all matters of controversy, either in law or equity, that either party may think he has a right to urge, without regard to any form, and whose award, when returned, shall be made the judgment of the court.”
At the July term, 1830, the arbitrators returned *128 their award, which, notwithstanding the objections of the present appellants, was made the judgment of the court at the next ensuing October term.
Though the words employed io sub-mi isioi. to «tatú lory nrbritratio - he “all matters oí difference,” yet the court will confine the arbitrators to the matters of diff¡renco involved in the preceding suits as exhibited by the record and pleading prior to the submission. If more is intended to be embraced, parties should make t state meat in writing setting forth the matters of differ ence not in suit.
However desirous we may be to enforce the decisions of arbitrators, because they are the judges selected by the parties, yet, in this case, we cannot sustain the judgment of the court rendered on the award.
There are two modes of settling controversies by arbitration ; the one is according to the rules of the common law, and the other according to the provisions of our statutes. This arbitration commenced in articles of agreement, which present the featuies of a common law submission. But in the articles there is a stipulation binding the parties to make their submission a rule of court-thus demonstrating an intention to make the arbitration statutory.
The order of court is sufficiently broad to embrace every description of controversy existing between the parties, whether in suit or not. 1 he language used, “all matters of difference,” embraces every tiling. Still, w'e apprehend, it must be confined’ to the matters of difference exhibited in the suit in chancery and the action of ejectment then pending, and that the arbitrators could not, under such a general submission in a statutory arbitration, undertake to settle all the disputes, of whatever nature, existing between the parties relying upon the power of the court to enforce the, award by its judgment. Such a course would be directly against the authority of the cases of Fitzgerald, &c. vs. Fitzgerald, &c. Hardin, 288,and Emerson vs. Hutcheson, II Bibb, 455. The doctrine of these cases is, that the record or pleadings of the parties, previous to the submission, must shew the matters to he determined by the arbitrators. This conforms to our views of the requirements of our statute, I Dig. 90. It is our opinion, therefore, that the submission did not embrace any thing more than the suit in chancery instituted bv Smith’s heirs vs. Frost. &c. and the ejectment instituted by Singleton. If the parties, by their articles, designed t@ embrace other matters, it was their duty, in mating the submission a rule of court, to file a statement in *129 writing, shewing the nature of any controversy not in suit, and then, by the terms of submission, embrare it As this was not done, no judgment of the count could legally be rendered upon any award touching such matter An-.l so far as the award of the arbitrators operates upon matters not embraced by the suits aforesaid, the parties must he left to their common law remedies, if any they have, viewing the proceeding as a common law arbitration.
Error to renib'r judgment ¡ng matters not w.-tuin the submission>
Etroneous to render judgment nn an award affecting the rights of m-fan-8, unless they were properly represented in c-mrtby guardian according to statute 1797, 1 Diz. 89.
When article binding parties to submit their controvers, to aritration by the rule of court, andrulematie, arbitratois receive their authority from the rule, not from the articles; and should decide m ejectment upon the whole ease, though the demist: in one count be in the name of lessors who did not sig-o the agreement.
*129 It was altogether improper in the court to render judgment upon so much of the award as directed Martha Frost to restore the possession of land which she had recovered in an action of ejectment against Smith’s heirs. This matter was not embraced by the submission viewing it as a statutory arbitration’; and whether the award on this subject is worth any thing upon common law principles, taking the articles as evidence of the extent of the submission, we shall not now decide. This suit is, however, not expressly named in the articles.
The award and judgment of the court operate upon the rights of the heirs of Joseph H ughes, deceased, requiring them to release lands which bad been conveyed to their ancestor. This is clearly erroneous. It does not appear whether the heirs of Joseph Hughes were under age or that they were represented in the submission by their guardian. It may be inferred that they were infants, from the circumstance that Susannah Hughes undertakes, in the article of agreement, to act for them ; but were that the case, there is no evidence that she liad authority as guardian to submit their claims to arbitration according to the statute of 1797, I Dig. 89, We think the record should furnish souse evidence of the authoritv to submit the controversy to arbitration, before the rights of infants are affected by the award. We look upon the judgment against the heirs of Hughes, therefore, as altogether unwarranted.
The arbitrators refused to decide upon the count in the ejectment case instituted by Singleton, in which the demise was laid in the names of the Cr.tigs, because, as they say, the CraijiS were no parte- to the written agreement authorizing the ar *130 bitration. Upon the count on Singleton’s demise they /bund that be had no. title, and therefore came to the conclusion that there could be no recovery by the plaintiff in this suit. Here we think the arbitrators ran into another error by regarding the articles of agreement as governing and controlling their proceedings. Regarding the submission as totally within the rules applicable to arbitrations at common law, and looking to the articles of agreement as conferring their authority, the opinion expressed by the arbitrators as to a want of power to make an award which wonlcl bind the Craigs, was correct. But we regard tiie authority of tiie arbitrators as derived from the rule of court, making it a statutory submission, so far as the suit iu chancery and the action of ejectment, instituted by Singleton, were concerned. Power was, therefore, confet red to decide the controversy upon both counts of the declaration, and the arbitrators should have done so. it does frequently happen that an individual who uses the names of others in prosecuting suits, should be protected in such use of other’s names. Whether Singleton had such a right to use the names of the Craigs, the arbitrators seem not to have enquired, but dismissed the subject upon the ground that the Craigs had not signed the arbitration articles. We tliinti tiie arbitrators should have investigated the wiioie merits of the action of ejectment upon the same points and to the full extent that the circuit court would have done it, had the cause been conducted to a triad without a submission. It is very clear that the nominal plaintiff mioht have succeeded upon the demise in the name of the Craigs by proving title in them, had the trial taken place in the circuit, court. By the submission, under the order ■of court, the whole case, as depending upon both demises iu the declaration, was properly placed before tiie arbitrators for adjudication, and their failure to dispose of the case upon each demise was a failure to decide the entire controversy submitted as embraced by the action of ejectment, which is indivisible, ami, therefore, the court should have refused to give a judgment upon the award. The judgment, as rendered by tiie court, manifests the impropriety of the failure, on the part of the arbitra *131 tors, to dispose of the demise in the names of the Craigs. The defendant is to go hence without day. He had no right to escape the action oí John Doe upon the demise of the Craigs, both in the circuit cotut anil before the arbitrators, as he has done.
Crittenden and Owsley for appellants ; Denny apd Hoggin for appellees.
We are of opinion, upon the whole case, that the arbitrators and the court have erroneously undertaken to bind the heirs of Hughes ; that they have erroneously omitted to dispose of the demise in the names of the Craigs, and that they have aho erred in adjudicating upon matters not embraced by the submission.
Vt hereto re, the judgment of the circuit courtis reversed, and the cause remanded, with directions to enter no judgment upon the award. The appellants must recover their costs.